UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| SUZANNE E. NASH<br>(Social Security No. XXX-XX-7838), | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 2:13-cv-226-WGH-JMS |
| CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security, | ) ) ) ) | |
| Defendant. | ) | |

**MAGISTRATE JUDGE'S FINDINGS OF FACT AND DECISION**

I find that Susanne Nash ("Nash") raises six issues on appeal in her Brief, which are as follows:

(1) Did the ALJ properly address the opinions of treating physician Dr. John Johnson?

(2) Did the ALJ properly address the opinions of state agency physicians Dr. Sands and Dr. Ruiz?

(3) Did the ALJ properly address the opinions of consultative examiner Dr. Wang?

(4) Did the ALJ properly address the evidence concerning Nash's ability to concentrate found in the opinions of Dr. Patrick Brophy, Vocational Counselor Linda Vicory, Case Manager Sara Minor, and Tony Wassel, who is a friend or guardian of Nash?

(5) Did the ALJ properly assess Nash's credibility?

(6) Was the ALJ's hypothetical question to the Vocational Expert improper because it did not include certain alleged manipulative impairments?

With respect to each issue, I make the following findings:

1. I find no error or harmless error in the ALJ's failure to assess Dr. Johnson's records. These records preceded the onset date by one year and covered a short period of time. They addressed Nash's condition immediately after surgery and did not specifically address long-term complications except through some predictive language by Dr. Johnson. I therefore find no error in that regard.

2. I find that the ALJ properly assigned great weight to Dr. Sands's and Dr. Ruiz's medical opinions. I find that these opinions support the ALJ's residual functional capacity ("RFC") determination. I note that Drs. Sands and Ruiz performed their reviews without the benefit of assessments by Drs. Johnson ([Filing No. 18-16 at ECF pp. 16–18](Filing No. 18-16 at ECF pp. 16–18)) and Srinivaserao ([*id.* at ECF p. 11](id. at ECF p. 11)) which were added to the Record later. For the reasons I discussed in addressing Issue 1, the absence of Dr. Johnson's records renders the ALJ's assignment of great weight a harmless error. The absence of Dr. Srinivaserao's records creates a closer call but also amounts to harmless error. Dr. Srinivaserao reported a "diffuse bulging" of Nash's disc at C5-C6 that "extends into the neural foramen on the right side" and also noted that her "right exiting nerve root appears impinged." ([Filing No. 18-16 at ECF p. 11](Filing No. 18-16 at ECF p. 11).) However, I am not at liberty to reweigh the evidence myself, *see [Butera v. Apfel,](Butera v. Apfel,)* [173 F.3d 1049, 1055 (7th Cir. 1999)](173 F.3d 1049, 1055 (7th Cir. 1999)), and that would be required if I ordered the ALJ to reconsider this case because one piece of medical data was not considered by the state agency physicians.

3. The ALJ gave "great weight" to the opinion of Dr. Shuyan Wang, a consulting physician. (Filing No. 18-2 at ECF p. 29.) The ALJ found that Dr. Wang's opinion indicates that Nash is able to perform "a limited range of light work." (Id.) Dr. Wang's report does state that Nash walked with a "normal gait," but also opines that Nash "may need some restriction for standing and walking." (Filing No. 18-11 at ECF p. 87.) Dr. Wang does not quantify just how much of a "restriction" is necessary. In this case, the ALJ's finding that Nash can perform light work requires that Nash be able to do a "good deal" of walking—but not constant walking. (*See* 20 C.F.R. § 404.1567(b).) An ALJ who sees a consulting physician's report of both "normal gait" and an unquantified limitation of walking and standing can be justified in concluding that a person can perform light work. Though another ALJ might have concluded differently, there is no error in the assessment of Dr. Wang's opinions.

4. Dr. Patrick Brophy performed a consultative psychological examination on June 30, 2010. (Filing No. 18-11 at ECF pp. 76–80.) This examination found Nash's concentration "impaired." (*Id.* at ECF pp. 78–79.) A third-party functional report from Sara Minor, Nash's Case Manager at Hamilton Center, described Nash as having a number of difficulties with standing, sitting, remembering, concentrating, and following instructions. (*Id.* at ECF p. 62.) She described Nash as being unable to pay attention for more than a few minutes at a time. (*Id.* at ECF p. 64.) A similar functional report

from Mr. Tony Wassel, a friend or guardian, supported Ms. Minor's observations. (*See* *id.* at ECF p. 74.)

Nash underwent a vocational evaluation with Linda Vicory of the Indiana Department of Human Resources' Vocational Rehabilitation Services division. (Filing No. 18-17 at ECF p. 34 *et seq.*) Because Nash was unable to stand for long periods, Ms. Vicory tested Nash's ability to perform a variety of clerical tasks from a seated position. (*Id.* at ECF p. 35.) With each task, Ms. Vicory observed that Nash's concentration waned—and her error rate increased—within five to seven minutes. (*Id.* at ECF pp. 35–36.) She did not complete any exercise, and she quit each due to frustration within 20 minutes. (*Id.*) Ms. Vicory also observed that Nash's performance was "below a level acceptable for office assistant jobs" and "significantly below a competitive rate." (*Id.*) In her summary, Ms. Vicory opined that, "[b]ased on Suzanne's poor physical endurance, inability to maintain focus on work tasks, low rate of work, high error rate, and high frustration level, it is the opinion of the evaluator that competitive employment is not a realistic goal at this time." (*Id.* at ECF p. 37.)

The ALJ discussed Dr. Brophy's report. He pointed to Dr. Brophy's conclusions that Nash was "delusional," had been diagnosed with "alcohol abuse in remission" and personality disorder, and experienced only "moderate" psychiatric symptoms. (*See* Filing No. 18-2 at ECF p. 29.)

The ALJ also discussed Vicory's report. He assigned it "little weight" because it was "not consistent with the record." (*Id.* at ECF p. 32.) Specifically, he indicated that treating records from Dr. Balmaseda indicated

that Nash did not walk with an assistive device, and that psychiatric records from Hamilton Center indicated Nash's mood improved during treatment. (*Id.*) Finally, the ALJ concluded that Ms. Vicory was not an acceptable medical source under the appropriate regulations. (*Id.*)

As to Ms. Minor and Mr. Wassel, the ALJ recognized that he must accord these opinions "some weight" under the regulations. (*See id.*) However, the ALJ explicitly states that he gave these opinions "little weight" but does not explain why he gave them little weight. (*See id.*)

> The ALJ concluded that Nash
>
> is able to understand, remember and carry out short, simple, repetitive instructions; is able to sustain attention and concentration for two-hour periods at a time and for eight hours in the workday on short, simple, repetitive instructions; is able to use judgment in making work decisions related to short, simple, repetitive instructions; would require a set schedule with set routines and procedures and few changes during the workday; [and] is unable to perform fast paced production work[ . . . ]. <u>The medical evidence does not support more extensive limitations than those in the residual function capacity</u>."

(*Id.* at ECF p. 33 (emphasis added).)

I find that the ALJ erred in this conclusion. Aside from Dr. Brophy's evaluation, the only medical records addressing Nash's mental state and abilities are from Hamilton Center, where Nash was voluntarily hospitalized for eight days with suicidal thoughts in September 2009. (Filing No. 18-8 at ECF pp. 8–18.) She was discharged with a diagnosis of major depressive disorder, alcohol abuse in early remission, amphetamine and opiate abuse in remission, and histrionic and borderline personality traits. (*Id.* at ECF p. 18.) The ALJ found that Nash continued to treat at Hamilton Center for well over one

5

year—until January 2011—during most of which time the records indicate presence of serious or severe psychiatric symptoms. (Filing No. 18-2 at ECF p. 28.) The ALJ then found that Nash's "personality disorder" "was managed with medications prescribed by her treating physician." (*Id.* at ECF pp. 28–29 (citing Filing No. 18-21 at ECF pp. 29–45).)

I find that none of the medical evidence cited to by the ALJ specifically addresses Nash's ability to concentrate. What diagnoses are found in those medical records—a suicide attempt, depression, substance abuse in remission, or histrionic personality disorder—all suggest that there would be significant problems with maintaining concentration. All of the evidence from Dr. Brophy, along with the lay evidence from Minor, Wassel, and Vicory, support the conclusion that Nash has significant impairments in the ability to concentrate. I cannot trace the path of the ALJ's reasoning with respect to his conclusion that Nash can concentrate for two hours at a time, and for an eight-hour day.

  5. I find that the ALJ's credibility assessment in this case (*see* Filing No. 18-2 at ECF pp. 29–31) is not patently wrong. The ALJ specified ten factors in support of his assessment, including that Nash:

  (1) worked part-time at Sam's Club in 2010;
  (2) "was treated for kidney stones and a urinary tract infection, which is inconsistent with the severity of her symptoms";
  (3) presented inconsistent accounts of her past occupations;
  (4) presented inconsistent causes of her injuries;
  (5) was considered "an unreliable, possibly delusional historian" by multiple sources;
  (6) gave a questionable effort during Dr. Wang's consultative examination;
  (7) did not adhere to her psychiatric treatment program, even though she stated in December of 2011 that her treatment was helpful;

(8) appeared with a walker at the hearing even though a walker was never prescribed for her and her treating physician noted that she did not use an assistive device;
(9) claimed symptoms that her neurological consultant thought were unsupported by her condition; and
(10) engaged in apparent drug-seeking behavior.

(*Id.* at ECF pp. 30–31.) The ALJ conducted an extensive review of these factors and recited to appropriate legal criteria. While certain of his findings are subject to challenge[1], the majority of the findings are supported by evidence of the record, and therefore his credibility assessment cannot be set aside.

6. I find that the hypotheticals given to the vocational expert in this case were not incorrect because of a failure to include a manipulative impairment. The ALJ did not find that the plaintiff had a manipulative impairment or limitation in his residual functional capacity, and therefore his failure to include a limitation on manipulation in the hypothetical itself was not error. However, because remand is necessary to include a potentially different ability to concentrate, on remand the hypothetical questions to the vocational expert will not be identical to those used by the ALJ in the hearing under review.

## Conclusion

In this case, the ALJ did not commit error in most of the aspects raised by Nash. However, I cannot trace the path of his reasoning when he concluded that Nash can concentrate for two hours at a time and for an eight-hour

---

[1] As to Factor 8, I find that Dr. Balmaseda prescribed a walker for Nash for at least some period of time. (*See* Filing No. 18-2 at ECF p. 72.) As to Factor 4, it is not clear to me that Nash gave "inconsistent" reasons for her injuries.

7

workday. This error is not harmless. I remand this case for further development of the Record in that regard.

  **SO ORDERED** the 17th day of June, 2014.

              _____
               William G. Hussmann, Jr.
               United States Magistrate Judge
               Southern District of Indiana

**Served electronically on all ECF-registered counsel of record.**